UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JB&B CAPITAL, LLC, | )<br>)<br>)     3:21-CV-00117-DCLC-JEM<br>) |
|     Plaintiff, | ) |
| v. | )<br>) |
| MEDRITE, LLC, *et al.*, | )<br>)<br>) |
|     Defendants/Third-Party Plaintiffs, | ) |
| v. | )<br>)<br>) |
| CUTERA INC., | )<br>) |
|     Third-Party Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Third-Party Defendant Cutera Inc.'s ("Cutera") Motion to Dismiss [Doc. 40]. Third-Party Plaintiffs MedRite, LLC, and Laura Kasper responded [Doc. 41], and Cutera replied [Doc. 42]. This matter is now ripe for resolution. For the reasons that follow, Cutera's Motion to Dismiss [Doc. 40] is **GRANTED**.

**I.    BACKGROUND**

Plaintiff JB&B Capital is a Tennessee limited liability company that provides commercial lending services for equipment purchases [Docs. 18,¶ 1; 21-2, pg. 2]. Defendant/Third-Party Plaintiff MedRite is a New Jersey company, and Defendant/Third-Party Plaintiff Laura Kasper, a citizen and resident of New Jersey, is a physician licensed to practice medicine in New Jersey [Doc. 32, ¶¶ 7-8]. Third-Party Defendant Cutera is a Delaware corporation with its principal place of business in California [*Id.*, ¶ 9].

On August 11, 2021, JB&B Capital filed an Amended Complaint, asserting a breach of contract claim against MedRite and Kasper [Doc. 18]. It explained that on July 24, 2020, Kasper, on behalf of MedRite, signed an Equipment Finance Agreement with JB&B Capital to finance MedRite's purchase of lipolysis equipment ("Equipment") [*Id.*, ¶ 7]. According to JB&B Capital, MedRite made the first three installment payments under the Finance Agreement but failed to make its fourth installment payment [Doc. 23-2, ¶¶ 8-11] JB&B Capital stated that Kasper executed a personal guaranty of the Finance Agreement between JB&B Capital and MedRite, agreeing to "the full and prompt performance and discharge of all present and future obligations under the Agreement." [Doc. 18, ¶ 8]. JB&B Capital contended that MedRite failed to make payments under the Finance Agreement, thereby breaching their contract [*Id.*, ¶¶ 9-10]. Following MedRite's failure to pay, JB&B Capital declared MedRite in default and repossessed the Equipment [*Id.*, ¶¶ 10-11]. JB&B Capital asserted that MedRite and Kasper were jointly and severally liable for $208,429.70, in addition to pre-judgment interest, attorney's fees, and costs [*Id.*, ¶ 12].

JB&B Capital attached the Finance Agreement to its Amended Complaint [Doc. 18-1]. MedRite purchased the Equipment for $171,399.69 [*Id.*, pg. 1]. Kasper signed the Finance Agreement, and a personal guarantee for that Agreement, on July 24, 2020, and JB&B Capital's representative signed on July 30, 2020 [*Id.*, pgs. 1, 5].

MedRite and Kasper moved to dismiss JB&B Capital's Amended Complaint for lack of personal jurisdiction and failure to state a claim, under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively [Doc. 21-2, pgs. 4-14]. In support of their motion, MedRite and Kasper attached a declaration from Kasper in which she stated that she "did not execute or sign [the] [Finance] Agreement nor did [she] give anyone permission to do so on [her] behalf." [Doc. 21-1, ¶ 7]. The Court subsequently denied MedRite's and Kapser's motion to dismiss, concluding that

2

a forum selection clause in the Finance Agreement subjected MedRite and Kasper to personal jurisdiction in this District and that JB&B Capital adequately pleaded its breach-of-contract claim [Doc. 29, pgs. 5-11].

Following the denial of their motion to dismiss, MedRite and Kasper filed a Third-Party Complaint against Cutera, alleging claims for equitable indemnity, equitable contribution, declaratory judgment, fraud, negligent misrepresentation, fraudulent inducement, and promissory estoppel [Doc. 32, ¶¶ 66-120]. MedRite and Kasper assert that Cutera coerced them into a business relationship with JB&B Capital [*Id.*, ¶ 3]. They explain that, in July 2020, they began negotiating with Cutera, through its representative Michael Merulla, about purchasing the Equipment [*Id.*, ¶¶ 19-21]. According to MedRite and Kasper, Kasper repeatedly informed Merulla that she would not purchase the Equipment until she created a new business entity with a separate checking account from MedRite [*Id.*, ¶ 24]. MedRite and Kasper attach to their Third-Party Complaint text messages from Kasper to Merulla to that effect [Doc. 32-1, pgs. 9-11]. Merulla allegedly assured Kasper that no agreements would be executed and that he would submit only MedRite's and Kasper's credit application to JB&B Capital [Doc. 32, ¶ 26].

On July 24, 2020, Merulla provided MedRite and Kasper financing documents for the Equipment, but Kasper told Merulla that they were not buying the Equipment at that point [*Id.*, ¶ 28]. MedRite and Kasper assert that, despite their repeated statements refusing to buy the Equipment, Cutera processed a Purchase Agreement for the Equipment without their permission or knowledge [*Id.*, ¶ 31]. They contend Cutera then executed and submitted the Finance Agreement to JB&B Capital for the purchase of the Equipment without their permission [*Id.*, ¶ 35]. MedRite and Kasper accuse Cutera of copying Kasper's signature from another document onto the Finance Agreement with JB&B Capital [*Id.*, ¶ 37].

3

Cutera delivered the Equipment to MedRite and Kasper on July 31, 2020 [*Id.*, ¶ 44]. MedRite and Kasper assert that they immediately rejected delivery, but Kasper agreed to let Cutera store the Equipment with her "for the sole purpose" of allowing Cutera time to return the Equipment [*Id.*, ¶¶ 44, 50]. The Equipment, however, remained with MedRite and Kasper for more than a year before JB&B Capital repossessed it for their alleged breach of the Finance Agreement [*Id.*, ¶ 52]. Additionally, MedRite and Kasper note that the first payment for the Equipment was automatically charged to their checking account [*Id.*, ¶ 53]. When they brought that charge to Merulla's attention, he stated that Cutera would send them a check for $20,000.00 to offset the charge [*Id.*, ¶ 55]. MedRite and Kasper attach a copy of a $20,000.00 check from Cutera to their Third-Party Complaint [Doc. 32-1, pg. 13].[1] They declined to cash Cutera's check [Doc. 32, ¶ 57].

Cutera now moves to dismiss MedRite's and Kasper's Third-Party Complaint for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively [Doc. 40]. Cutera attaches a copy of the Purchase Agreement to its motion, showing that Kasper signed that agreement on July 10, 2020 [Doc. 40-1, pg. 1]. Additionally, Cutera attaches a picture of Kasper smiling and holding a copy of the Purchase Agreement [Doc. 40-2, pg. 1]. MedRite and Kasper responded to Cutera's motion [Doc. 41], and Cutera replied [Doc. 42]. This matter is now ripe for resolution.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule

---

[1] The Purchase Agreement that Kasper signed includes a provision stating that Cutera would send her a $20,000.00 check [Doc. 40-1, pg. 1]. It is unclear whether the picture of the check that MedRite and Kasper attach to their Third-Party Complaint is the check contemplated in the Purchase Agreement or a different check from Cutera.

4

12(b)(2) allows a defendant to move for dismissal based on a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant files such a motion, the plaintiff must show that the Court can exercise personal jurisdiction. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008).

A plaintiff's burden is "relatively slight" when establishing personal jurisdiction based on written submissions and affidavits. *Id.* (internal quotation marks omitted). Viewing the facts in favor of the plaintiff, "the plaintiff must make only a prima facie showing that personal jurisdiction exists." *Id.* at 360–61. To determine whether the plaintiff has made such a showing, the Court considers the pleadings and any affidavits submitted by the parties in the light most favorable to the plaintiff. Any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Dismissal under Rule 12(b)(2) is appropriate only if the specific facts alleged by the plaintiff, taken as a whole, fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003).

### III. ANALYSIS

Cutera argues that it is not subject to personal jurisdiction in this District [Doc. 40, pg. 5]. MedRite and Kasper respond that the Court may exercise personal jurisdiction over Cutera because of its purportedly substantial, continuous, and systemic contacts with Tennessee [Doc. 41, pg. 9].

The long-arm statute of the state in which a federal court sits determines a federal court's personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Tennessee's long-arm statute gives jurisdiction "[o]n any basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20–2–225. The Tennessee Supreme Court has ruled that this statute permits the exercise of jurisdiction to the full extent permissible under the United States Constitution. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d

5

635, 646 (Tenn. 2009). Therefore, this Court must determine if exercising jurisdiction over Cutera would violate federal due process under the United States Constitution. *See Daimler AG*, 571 U.S. at 125.

A court's exercise of jurisdiction does not violate federal due process when a defendant has "certain minimum contacts with the [forum] State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 126 (internal quotations omitted). The tenet of "fair play and substantial justice" has led to two types of personal jurisdiction: general and specific. *Id.* at 127.

A court can exercise general personal jurisdiction over a defendant "when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (internal quotation marks omitted). Here, Cutera plainly does not have "continuous and systemic" contacts with Tennessee that would render it subject to an exercise of general personal jurisdiction. Cutera is formed under the laws of Delaware, has its principal place of business in California, and conducts such a scant amount of activity in Tennessee that it only has two employees in the state. [Doc. 40, pg. 7]. Moreover, Cutera's sales in Tennessee represented less than 1% of its total sales for 2020. [*Id.*]. Thus, the Court will turn to whether Cutera is subject to specific personal jurisdiction.

Cutera argues that it is not subject to specific personal jurisdiction in Tennessee because it conducts only a small amount of business in the state, MedRite's and Kasper's claims do not arise from—or relate to—any activity it conducted in Tennessee, it has no substantial connection with Tennessee from conduct purposefully directed toward the state, and MedRite's and Kasper's claims do not implicate any of its limited activity in Tennessee [*Id.*]. MedRite and Kasper respond

6

that Cutera admits it sells products in Tennessee [Doc. 41, pg. 10]. They argue that Cutera makes approximately 1% of its total sales in Tennessee, which is enough to subject it to specific personal jurisdiction because its total revenue from Tennessee sales is estimated at $580,000.00 [*Id.*]. MedRite and Kasper note that Cutera does not provide its total number of transactions or "how many financial companies it uses[,] or engages with[,] to provide financing for its products." [*Id.*]. They also contend that the Court has specific personal jurisdiction because "Cutera is selling products throughout North America and the world." [*Id.*].

Unlike general jurisdiction, specific jurisdiction focuses on the connection "between the forum and the underlying controversy." *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 917–18 (6th Cir. 2019) (quoting *Goodyear*, 564 U.S. at 919). A defendant's contacts with the forum state, not the plaintiff's contacts, build that connection. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). A defendant must have directed some action to the forum state, "[b]ut a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. In the instant case, the Court will look to Cutera's contacts with Tennessee.

According to the Supreme Court, specific personal jurisdiction applies to defendants "less intimately connected" with a State. *Ford Motor Co. v. Mont. Eighth Judicial District Court*, 141 S. Ct. 1017, 1024–25 (2021) (internal citations and quotation marks omitted). The contacts needed for specific jurisdiction go by the name "purposeful availment" because the defendant is not "at home," and the forum state may exercise jurisdiction in certain cases only. *Id.* The plaintiff's claims must arise out of—or relate to—the defendant's contacts with the forum. *Id.* The Sixth Circuit uses three criteria for specific jurisdiction: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the acts of the defendant, or consequences caused by the defendant, must have a substantial enough connection

7

with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Intera Corp.*, 428 F.3d at 615 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). The Court lacks specific personal jurisdiction over the defendant if any one of the three criteria are not met. *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

MedRite and Kasper have not alleged any affiliation between Tennessee and the underlying controversy, let alone any connection between Cutera's scant contacts with Tennessee and their claims against it. [*See* Doc. 32, ¶¶ 66-120]. The connection between the defendant's in-state activity and the cause of action must be "*substantial.*" *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 692 F.3d 469, 472–73 (6th Cir. 2012) (emphasis in original). Even if MedRite and Kasper alleged that Cutera conducted substantial activities in Tennessee, MedRite's and Kasper's claims do not arise out of Cutera's sales in Tennessee. MedRite and Kasper negotiated with Cutera in New Jersey, signed the Purchase Agreement in New Jersey, and stored the Equipment in New Jersey. [*Id.*, ¶¶ 19-21, 31, 35, 44, 50]. Cutera's allegedly coercive actions during negotiation of the Purchase Agreement all took place in New Jersey. [*See id.*, ¶¶ 66-120]. The "arising from" element of specific personal jurisdiction "is not satisfied unless 'the operative facts of the controversy arise from the defendant's contacts with the state.'" *Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 830 (E.D. Mich. 2016) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000)). Here, the controversy between the parties does not arise from Cutera's contacts with Tennessee.

MedRite and Kasper have failed to show that the dispute with Cutera arises from its activities in Tennessee or that Cutera has a substantial connection with Tennessee. *Intera Corp.*, 428 F.3d at 615; *LAK, Inc.*, 885 F.2d at 1303. Thus, the Court lacks personal jurisdiction over Cutera, and MedRite's and Kasper's claims against Cutera are **DISMISSED WITHOUT**

8

**PREJUDICE**. Because the Court lacks personal jurisdiction, it does not reach the remaining arguments in Cutera's motion to dismiss.

## IV. CONCLUSION

For the reasons stated herein, Cutera's Motion to Dismiss [Doc. 40] is **GRANTED**.

**SO ORDERED**:

s/ Clifton L. Corker
United States District Judge