UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| JB&B CAPITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 3:21-CV-00117-DCLC-JEM |
| | ) | |
| vs. | ) | |
| | ) | |
| MEDRITE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff JB&B Capital, LLC's Motion for Summary Judgment [Doc. 59]. To date, Defendants MedRite, LLC ("MedRite") and Laura Kasper have failed to respond in opposition. The deadline for filing oppositions having passed, the motion is now ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons explained below, JB&B's motion is **DENIED**.

**I. BACKGROUND**

In July 2020, FPC Financial Partners Corporation ("FPC") brokered an agreement between JB&B and MedRite, pursuant to which JB&B agreed to extend financing for MedRite's purchase of a piece of medical equipment (the "Agreement") [Doc. 48, ¶¶ 7, 10; Doc. 59-6, ¶¶ 4-5, 9]. Under the terms of the Agreement, JB&B agreed to provide financing in the amount of $166,399.69 in return for a 60-month installment schedule, totaling $206,277.33, exclusive of taxes and service fees [Doc. 48-1, pg. 1]. Kasper purportedly signed the Agreement as a member

of MedRite and individually as guarantor of MedRite's obligations under the Agreement [Doc. 48-1, pgs. 1, 5; Doc. 59-6, ¶ 10].[1]

A few days later, FPC notified JB&B of the need to revise the Agreement to provide for a higher financed amount, and Kasper purportedly executed a revised version of the agreement (the "Revised Agreement") the next day [Doc. 59-6, ¶¶ 11-12]. The terms of the Revised Agreement differed from the original with respect to the amount financed ($171,399.69), the length of the installment schedule (63 months), and the installment amounts (totaling $208,648.20, exclusive of service fees and taxes) [Doc. 48-3, pg. 12; Doc. 48-4, pg. 1]. JB&B issued payment, but MedRite failed to abide by the installment schedule [Doc. 48, ¶¶ 17, 19; Doc. 59-6, ¶¶ 16, 18, 22-23]. As a result, JB&B declared MedRite in default, took possession of the medical equipment, sold the equipment for $20,000, and applied the proceeds from the sale to the amount owed by Defendants [Doc. 48, ¶¶ 19-20; Doc. 59-6, ¶¶ 18-19]. The outstanding balance totals $188,429.70 [Doc. 59-6, ¶ 24].

Based on the foregoing, JB&B initiated this action against MedRite and Kasper, alleging that they are jointly and severally liable for breach of contract [Docs. 1, 18, 48]. JB&B now moves for summary judgment, seeking to recover only with respect to the original Agreement [Doc. 59].

## II. LEGAL STANDARD

Either party may seek entry of summary judgment as to any claim or defense. Fed.R.Civ.P. 56(a). The movant must identify each claim or defense on which summary judgment is sought and establish that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* The movant can discharge his burden by either affirmatively

---

[1] Kasper has maintained throughout the litigation that she did not execute the Agreement [Doc. 16-1, ¶ 7; Doc. 21-1, ¶ 7].

producing evidence establishing that there is no genuine dispute of material fact or pointing out the absence of support in the record for the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant discharges their burden, the nonmovant must "show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). And when the motion for summary judgment is unopposed, the Court must "carefully review the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *Fed. Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014).

### III. PROCEDURAL FLAWS

JB&B's Motion for Summary Judgment and Memorandum of Fact and Law suffer from technical and substantive defects that alone warrant denial of its Motion. On the technical side, the Court's Scheduling Order requires that summary judgment motions "be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine dispute for trial" [Doc. 26, ¶ 5c]. The Court warned that failure to include a statement of undisputed facts may result in the motion being stricken [*Id.*]. Because JB&B did not submit a separate statement of undisputed facts, its motion is liable to be stricken.

Substantively, JB&B's arguments fall far short of what is required under Rule 56. At this stage, JB&B carries the burden of proof to prove the elements of a breach of contract claim. *See Next Generation, Inc. v. Wal-Mart, Inc.*, 49 S.W.3d 860, 864 (Tenn. Ct. App. 2000). JB&B must therefore "lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727.1 (4th ed. updated Apr. 2023). This is just as much legal argument as evidentiary support.

3

*See* 11 Moore's Federal Practice § 56.70. However, nowhere in JB&B's five-page Motion or seven-page Memorandum does JB&B identify the elements of a breach of contract claim and explain in what way these elements have been conclusively established by the evidence presented [*see generally* Doc. 59; 59-1].

The substantive flaw is compounded by JB&B's assertion that summary judgment is not only warranted with respect to its claim against Defendants but also with respect to Defendants' affirmative defenses [Doc. 59, pg. 4; Doc. 59-1, pgs. 4-6]. There are 14 affirmative defenses listed in Defendants' Answer [Doc. 51, pgs. 5-7]. JB&B's Motion fails to name any one of them, contrary to Rule 56's requirement that each defense upon which summary judgment is sought be specifically identified [*see generally* Docs. 59; 59-1]; Fed.R.Civ.P. 56(a). That's not even mentioning the lack of legal argument on the elements of any of the 14 affirmative defenses and the basis for JB&B's contention that there is insufficient evidence to support them. JB&B cannot avoid this merely because Defendants will be the ones to bear the burden of proving their affirmative defenses at trial. *See Books A Million, Inc. v. H & N Enters.*, 140 F. Supp. 2d 846, 851 (S.D. Ohio 2001).

### IV.   MERITS

Even putting the above-described issues aside, JB&B has failed to establish the absence of a genuine dispute of fact with respect to the issues of liability. A claim for breach of contract has three elements: the existence of a valid and enforceable contract; a breach; and damages caused therefrom. *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). A valid and enforceable contract requires: (1) adequate consideration; (2) mutual assent to its terms; (3) the absence of fraud or undue influence; (4) sufficiently definite terms; and (5) no violation of public policy. *See Doe v. HCA Health Servs. of Tenn.*, 46 S.W.3d 191, 196 (Tenn. 2001).

4

Here, JB&B failed to establish the absence of a genuine dispute of fact with respect to the existence of a valid and enforceable contract. The signatures of JB&B's authorized representative and Kasper, individually and in her capacity as member of MedRite, could suffice to establish mutual assent. *See Moody Realty Co. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007); Tenn. Code Ann. §§ 48-238-103(a), 48-249-402(a). However, Kasper has maintained throughout this litigation that she did not sign the Agreement or authorize someone to sign on her behalf [Doc. 16-1, ¶¶ 7-8; Doc. 21-1, ¶¶ 7-8]. Kasper's testimony to that effect could, on its own, establish a genuine dispute of fact with respect to mutual assent. *Cf. Grassi v. Grassi*, No. 20-3358, 2021 WL 3355475, at *6 (6th Cir. Aug. 3, 2021) (unreported) (holding that plaintiff's "specific and repeated sworn deposition testimony that the signatures were forged" was sufficient to create a genuine question of fact as to the authenticity of signatures on two intellectual property agreements).

JB&B argues that Kasper's testimony is not enough under Tennessee law to invalidate the signature [Doc. 59-1, pg. 6 (citing *Ali v. Pro Real Est. Devs.*, No. M1999-00082, 2000 WL 192562, at *4 (Tenn. Ct. App. Feb. 18, 2000) (unreported))]. *Ali* is inapposite. The issue there was whether the chancery court's factual finding at *trial*—that plaintiff failed to prove that her signature on a power of attorney was a forgery—was supported by a preponderance of the evidence. 2000 WL 192562, at *5. The court of appeals affirmed, noting that the evidence before the chancery court was limited to Ali's testimony and the testimony of two experts, one of which rendered an inconclusive opinion and another who testified that the signature was genuine. *Id.* at *1, 5. The court of appeals' affirmance does not stand for the broad proposition that Kasper can never rely on her own testimony to prove forgery.

JB&B also argues that Kasper's testimony is not enough in the face of forensic document examiner Khody R. Detwiler's opinion to the contrary [Doc. 59-1, pgs. 5-6]. Not so. Detwiler

5

compared Kasper's purported signatures on the Agreement and related documents with those which appeared on Kasper's driver's license, 14 signed checks, a notarized Verification, and handwriting exemplars [Doc. 59-2, pgs. 2, 10; *see id.*, pgs. 96-106]. Based on that comparison, Detwiler concluded that the signatures on the Agreement and related documents were "genuine" [Doc. 59-2, pgs. 11, 21]. To credit Detwiler's expert opinion over Kasper's testimony would require the Court to weigh the evidence in JB&B's favor. That the Court cannot do. *Anderson*, 477 U.S. at 255. Thus, a genuine dispute of fact exists with respect to the element of mutual assent.

## V. CONCLUSION

Because genuine disputes of fact exist with respect to the issues of liability, JB&B's Motion for Summary Judgment [Doc. 59] is **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge